IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No.: 3:25-cv-00236-WWB-MCR

CONSEJO REGULADOR DEL TEQUILA
A.C.,
     Plaintiff,
v.
ADDITIVE FREE ALLIANCE, INC., and
S2F ONLINE, INC.,

Defendants.

## DEFENDANTS' ANSWER, DEFENSE AND AFFIRMATIVE DEFENSES

Defendants, ADDITIVE FREE ALLIANCE, INC. ("AFA") and S2F ONLINE, INC. ("S2F"), through their counsel and pursuant to Fed. R. Civ. P. 12, file this Answer, Defense and Affirmative Defenses and allege:

## INTRODUCTION

This lawsuit improperly seeks to suppress a consumer advocacy program that Plaintiff knew had been inactive for months when it filed its Complaint. The program previously sought to promote transparency regarding the use of additives in tequila. Defendants never claimed to be a certification body and made clear that their platform offered independent, voluntary and optional evaluations — not certifications under Mexican regulatory standards — of additive free-related claims.

Plaintiff Consejo Regulador del Tequila A.C. ("CRT") is attempting to assert regulatory powers it does not possess under U.S. law, conflating its authority as a private Mexican conformity assessment body with exclusive legal power over U.S. commercial speech. Defendants' activities fall squarely within the protections of the First Amendment and reflect a legitimate effort to inform consumers, not infringe CRT's certification mark for TEQUILA.

Not only are the CRT's claims an unconstitutional overreach, its own regulatory authority has also been severely undermined by recent events in Mexico. In May 2022, the Secretary of Economy of the Mexican Government, which CRT acknowledges in paragraph 24 establishes procedures for the certification of products to meet regulations,[1] has approved an unrelated entity, Certificación Mexicana, S.C., to inspect and evaluate tequila for compliance with the same regulatory standards that CRT uses for testing and certification (i.e., "Norma Oficial Mexicana NOM-006-scfi-2012 – Bebidas alcoholicas-Tequila-Espcificaciones" (Mexican Tequila Standards)). CRT challenged this accreditation in Mexico, but its lawsuit was swiftly dismissed in June 2023 because CRT lacked standing. And while CRT has appealed the dismissal, CRT can no longer claim exclusive and legitimate control over the TEQUILA mark when Certificación Mexicana, S.C., an unrelated direct competitor of CRT, is now approved to inspect and evaluate tequila. The Mexican government's decision to approve Certificación Mexicana, S.C.

---

[1] As the body that establishes the procedures for the certification of products that meet the standards to be called tequila, it is the Mexican government, not CRT, that should be the owner of the Tequila certification mark.as it has the ultimate and legitimate control over use of the mark.

confirms that multiple accredited bodies can lawfully evaluate tequila under the same legal framework, thereby calling into question the validity of CRT's claim of having exclusive rights over the TEQUILA mark and the federal trademark registration upon which this lawsuit is based.

## ANSWER

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1; therefore, denied.

2. Admitted.

3. Admitted.

## JURISDICTION AND VENUE

4. Admitted that Plaintiff has brought the claims identified in paragraph 4 and that the Court has subject matter jurisdiction. Denied that Plaintiff is entitled to any relief for such claims.

5. Admitted that Defendant S2F resides in this District. The remainder of the allegations set forth in paragraph 5 are denied.

6. Denied that Scarlet Sanschagrin is a principal of Defendant S2F, that she resides in this District and that she transacts business in this District. The remainder of paragraph 6 is admitted.

7. Admitted.

8. Denied.

9. Admitted.

10. Denied.

11. Admitted that S2F resides in this District and that one of the principals of AFA resides and conducts business in this District. Denied as to the remaining allegations set forth in paragraph 11.

## FACTUAL BACKGROUND

12. Admitted.

13. Admitted.

14. Denied.

15. Denied. Defendants deny that CRT has exclusive rights to determine whether a product is Tequila. That determination is governed by the Mexican government and relevant standards, not CRT exclusively.

16. Denied. CRT is dominated by large producers who fund it and does not operate equitably or impartially across the agave-tequila supply chain.

17. Denied. CRT's practices fail to ensure authenticity as evidenced by the wide distribution of reportedly adulterated products certified under its oversight.

18. Admitted.

19. Admitted.

20. Denied.

21. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21; therefore, denied.

22. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22; therefore, denied.

23. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23; therefore, denied.

24. Admitted.

25. Admitted.

26. Denied. CRT's authority is limited to conformity assessment under Mexican law and does not extend to exclusivity in certification across all tequila-related designations.

27. Denied. Only the Mexican government can authorize the use of 'TEQUILA' as a Denomination of Origin.

28. Admitted that DGN, through the SE, develops the standards to which Tequila must adhere. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations set forth in paragraph 28; therefore, such allegations are denied.

29. Denied.

30. Admitted.

31. Admitted.

32. Admitted.

33. Denied. The name of the program was changed from "Verification" to "Confirmation" in 2021 after CRT's objection. CRT subsequently approved its use on labels.

34. Denied.

35. Denied.

36. Admitted.

37. Denied. Defendants did not operate a certification program and never certified tequila or claimed any governmental authority.

38. Denied as phrased. Though S2F is not authorized by the Mexican government to certify tequila, Defendants never sought such authorization, never claimed to be authorized certifiers, and never used the TEQUILA trademark apart from lawful editorial use and commentary. The remainder of the allegations of paragraph 38 are denied.

39. Admitted that Grover Sanschagrin is a principal of S2F. Denied that Scarlet Sanschagrin is a principal.

40. Admitted that such statements were made. Denied that the statements are false. Any statements by the Sanschagrins that CRT's oversight of tequila labelling is ineffective and unreliable are true and protected speech. The ineffectiveness of CRT's oversight is validated by its own admission that it relies on tequila manufactures to honestly self-report their compliance with CRT regulations, without the CRT performing any regular testing to verify such self-reporting.

41. Admitted that Grover Sanschagrin made the statements referenced in paragraph 41. Denied that such statements are false. CRT threatened distilleries with retaliation, prompting AFA to remove listings.

42. Denied.

43. Admitted.

44. Admitted.

45. Admitted.

46. Admitted.

47. Denied.

48. Denied. Defendants offered a consumer information program, not a tequila certification.

49. Admitted that Additive Free Alliance is not authorized to certify Tequila and does not have a license agreement with CRT. Denied that Additive Free Alliance requires any license from CRT to use TEQUILA for Additive Free Alliance's consumer advocacy program.

50. Denied.

51. Denied.  CRT has permitted the phrase "Additive Free" to appear on approved labels for tequila for years and cannot now claim that identifying particular brands of tequila as "Additive Free" is illegal or improper.

52. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 52; therefore, denied.

53. Admitted.

54. Admitted.

55. Admitted that the quotes referenced in paragraph 55 appear on the document attached as Exhibit E to the Complaint. Denied as to the remainder of paragraph 55.

56. Admitted that the referenced quote appears on the document attached as Exhibit E to the Complaint. Denied as to the remainder of paragraph 56.

57. Admitted.

58. Denied. The term 'Additive Free' is truthful when applied to tequilas made without additives.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Denied. Synthetic additives can be tested for, and Additive Free Alliance's testing protocol did so.

64. Denied.

65. Denied.

66. Denied.

67. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 67; therefore, denied.

68. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 68; therefore, denied.

69. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 69; therefore, denied.

70. Denied.

71. Denied.

72. Denied.

### Count I: Alleged Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114

73. Defendants reassert and incorporate by reference the responses set forth in paragraphs 1-72

74. Denied.

75. Denied.

76. Denied.

77. Denied.

## Count II: Alleged False Description Under
## the Lanham Act, 15 U.S.C. § 1125(a)

78. Defendants reassert and incorporate by reference the responses set forth in paragraphs 1-77.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

## Count III: Alleged Dilution Under
## the Lanham Act, 15 U.S.C. § 1125(c)

84. Defendants reassert and incorporate by reference the responses set forth in paragraphs 1-83

85. Denied.

86. Denied.

87. Denied.

88. Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief requested in the Complaint, including injunctive relief, damages, attorneys' fees as permitted by applicable statutes, and costs and demand that judgment be entered in Defendants' favors.

Defendants further demand trial by jury.

## Defense

## SLAPP Suit under Florida Law

Plaintiff's lawsuit is a Strategic Lawsuit Against Public Participation (SLAPP) whereby Plaintiff seeks to suppress Defendants' protected free speech rights. Under Florida's Anti-SLAPP Statute (Fla. Stat. § 768.295), this Complaint improperly seeks to challenge speech that is protected under the Florida Constitution and the First Amendment of the United States Constitution. Defendants' activities—educating consumers about additive use in tequila and advocating for transparency—are expressions of free speech. CRT's claims attempt to censor Defendants' legitimate public participation on matters of product information and ingredients. Therefore, the Florida claims alleged in the Complaint should be dismissed pursuant to Florida's Anti-SLAPP laws, with this Court awarding Defendants their attorneys' fees and costs as authorized by such statute.

## AFFIRMATIVE DEFENSES

## First Affirmative Defense

## Unclean Hands

CRT's claims are barred by the doctrine of unclean hands. CRT has acted inequitably by certifying adulterated tequila products that do not meet the required Mexican government regulatory standards for authenticity as reported by third-party laboratory tests. Initial third-party laboratory testing of fifteen tequilas from nine different distilleries reported the presence of

non-agave alcohol, despite CRT certifying and labeling them as "100% AGAVE." Through its widespread certification of reportedly non-compliant and adulterated tequila, CRT has misused its certification mark, misleading consumers and undermining the integrity of the tequila certification process. CRT's active role in certifying reportedly adulterated tequila precludes it from seeking equitable relief in this matter. CRT has certified and labelled products as "100 AGAVE," despite these products reportedly substituting agave with inexpensive alcohol made from cane sugar, thereby misleading consumers and causing economic harm to both agave farmers and the Mexican economy.

## Second Affirmative Defense

## Unclean Hands

Plaintiff's claims for injunctive relief are barred by the doctrine of unclean hands because the Complaint is infected with knowingly false factual allegations that strike at the core of Plaintiff's case. Specifically, Plaintiff alleges that:

1. Defendant AFA is presently and actively using its website (www.additivefreealliance.com/about) to infringe Plaintiff's TEQUILA certification mark (see Compl. ¶ 9); and

2. Defendant S2F is similarly using its websites (www.tequilamatchmaker.com and www.tastetequila.com) to engage in infringing certification activity (see Compl. ¶ 33).

These assertions are demonstrably false. Plaintiff knew full well at the time of filing that both Defendants had publicly and categorically **ceased** any alleged activity involving the TEQUILA mark through their respective websites as of **October 2024—over six months** before the Complaint was filed. Despite this knowledge, Plaintiff falsely framed the websites as <u>currently active</u> in order to manufacture an ongoing injury and fabricate a basis for injunctive relief.

This deliberate misrepresentation was not a peripheral mistake but a strategic falsehood going to the heart of Plaintiff's equitable claims. Plaintiff's own evidence confirms the shutdown of the allegedly infringing program (see, e.g., social media posts cited in the Complaint at ¶ 41). Accordingly, Plaintiff has come to this Court seeking equitable relief with unclean hands, and its request for injunctive relief should be denied for that reason alone.

### Third Affirmative Defense

### Invalidity of TEQUILA Certification Mark

The TEQUILA certification mark Registration No. 5225126 is invalid and void *ab initio* because it is the Mexican government, not CRT, that ultimately controls who has the right to identify products as TEQUILA. Indeed, in May 2022, the Mexican government approved a third-party, Certificación Mexicana, S.C., to inspect and evaluate tequila for conformity with the same standards that CRT uses. As a result, CRT cannot claim exclusive and legitimate control over the certification of tequila, rendering its federal trademark registration invalid and subject to cancellation.

**Fourth Affirmative Defense**

**Protected First Amendment Speech**

As a separate and affirmative defense, Defendants assert that the claims in the Complaint are barred, in whole or in part, by the First Amendment to the United States Constitution. The statements, evaluations, and editorial content produced by Defendants constitute protected commercial and non-commercial speech. Plaintiff, a foreign conformity body, lacks standing to restrict speech under U.S. law.

**Fifth Affirmative Defense**

**Acquiescence**

Plaintiff's claims are barred by the doctrine of acquiescence. Despite being aware of Defendants' actions, Plaintiff (CRT) implicitly approved or acquiesced to those actions by failing to assert its rights in a timely manner. Specifically, on April 14, 2021, Defendants met with CRT wherein CRT objected to the manner in which Defendants were promoting their program and requested that certain corrective steps be taken. On April 28, 2021, Defendants sent a letter to the CRT detailing the changes made to their platform and operations to address CRT's concerns. After these changes were implemented, CRT did not object to Defendants' activities for almost four years, until it filed this Complaint. CRT's failure to take action or raise objections within a reasonable timeframe constitutes acquiescence, which bars CRT from now asserting claims it should have raised earlier.

Moreover, after Defendants took corrective measures to address CRT's concerns, CRT subsequently approved labels on tequilas that included Defendants' "additive free" labeling, using the new modified language that Defendants had changed in response to CRT's request. CRT's approval of these labels, without objection, further demonstrates its acquiescence to Defendants' actions and precludes the claims now being asserted.

### Sixth Affirmative Defense

### Equitable Estoppel

Plaintiff's claims are barred by the doctrine of equitable estoppel. CRT, despite being aware of Defendants' actions, caused Defendants to reasonably rely on CRT's approval and acceptance of Defendants' actions. Specifically, on April 14, 2021, Defendants met with CRT wherein CRT objected to the manner in which Defendants were promoting their program and request that certain corrective steps be taken. On April 28, 2021, Defendants sent a letter to the CRT detailing the changes made to modify their platform and operations to address CRT's concerns. Following these corrective measures, CRT did not object to Defendants' activities for almost four years, until it filed this Complaint.

In addition, CRT approved the labels on tequila bottles that included Defendants' "additive free" labeling, which reflected the changes Defendants made to the language in their platform after receiving the request from CRT. Defendants reasonably relied on CRT's approval of the modified labels and continued operations based on that approval. CRT's delay in asserting its

claims, despite the approval and modifications, and its failure to object during this period, has caused Defendants to incur detriment and prejudices, including reliance on the approved labeling for their business activities.

By failing to object to Defendants' corrective actions and CRT's approvals, CRT is now estopped from asserting claims based on those actions, as Defendants relied on CRT's silence and approval to their detriment. The doctrine of equitable estoppel bars CRT from reversing its prior course of conduct to the disadvantage of Defendants.

## Seventh Affirmative Defense

## Laches

Plaintiff's claims are barred by the doctrine of laches. CRT, despite being aware of Defendants' actions, failed to timely assert its claims, causing Defendants to rely on CRT's silence. Specifically, on April 14, 2021, Defendants met with CRT wherein CRT objected to the manner in which Defendants were promoting their program and request that certain corrective steps be taken. On April 28, 2021, Defendants sent a letter to the CRT detailing the changes made to modify their platform and operations to address CRT's concerns. Following these corrective measures, CRT did not object to Defendants' activities for almost four years, until it filed this Complaint. The filing of the Complaint after such a prolonged period of inaction constitutes an unreasonable delay, and as a result, CRT's claims are barred by laches.

Dated: May 23, 2025                          Respectfully submitted,

By: /s/ Steven I. Peretz
Steven I. Peretz (Florida Bar No. 329037)
Email: speretz@pch-iplaw.com
Michael B. Chesal (Florida Bar No.775398)
Email: mchesal@pch-iplaw.com
Albert Alvarez (Florida Bar No. 106859)
Email: aalvarez@pch-iplaw.com
Peretz Chesal & Herrmann, P.L.
1 S.E. 3rd Avenue, Suite 1820
Miami, FL 33131
Tel.: (305) 341-3000
Fax: (786) 746-6278

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document is being electronically filed on May 23, 2025 via CM-ECF, which will generate Notices of Electronic Filing to all parties or counsel of record on the below Service List.

<u>/s/ Albert Alvarez</u>

## <u>SERVICE LIST</u>

Daniel J. Barsky, Esq.
HOLLAND & KNIGHT LLP
Florida Bar No. 0025713
daniel.barsky@hklaw.com
701 Brickell Ave.
#3300
Miami, Florida 33131
Tel: (305) 458-1193
Fax: (305) 789-7799

Justin S. Cohen, Esq.
HOLLAND & KNIGHT LLP
Texas Bar No. 24078356
Justin.Cohen@hklaw.com
1722 Routh Street
#1500
Dallas, Texas 75021
Tel: (214) 969-1700
Fax: (214) 969-1751

*Counsel for Plaintiff*